NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

ALBERTO SALOME,                     :
                                    :
          Plaintiff                 :    Civ. No. 20-6569 (RMB-SAK)
                                    :
     v.                             :
                                    :         **OPINION**
ADMINISTRATIVE REMEDY               :
COORDINATOR, *et al.*,              :
                                    :
          Defendants                :
_____:

BUMB, District Judge

     This matter comes before the Court for screening of Plaintiff
Alberto Salome's pro se prisoner civil rights amended complaint
for *sua sponte* dismissal pursuant to 28 U.S.C. § 1915A(b) and 42
U.S.C. § 1997e(c); Plaintiff's motion to appoint pro bono counsel
(Dkt. No. 5), and Plaintiff's motions for an injunction. (Dkt.
Nos. 4, 9.) Plaintiff has not yet paid the filing fee or filed a
properly completed application to proceed without prepayment of
the fee under 28 U.S.C. § 1915(a) ("IFP application"). Therefore,
the Court will administratively terminate this case, subject to
reopening upon submission of the filing fee or a properly completed
IFP application.

I.   *Sua Sponte* Dismissal

When a prisoner files a civil action regarding prison conditions and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together

2

with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II.  DISCUSSION

    A.   The Amended Complaint

In a lengthy amended complaint, Plaintiff alleges a variety of Bivens claims against seventeen defendants at FCI Fort Dix for incidents between the dates of September 2018 and October 2020. With so many claims against so many defendants, the amended complaint is difficult to construe. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." All litigants, especially those appearing pro se, are best served by following this rule. In any event, the Court construes the amended complaint as raising Bivens claims based on failure to respond to administrative remedies, improper custody classification,

3

retaliation, inadequate medical and dental care, due process violations with respect to a disciplinary hearing, excessive confinement in the segregated housing unit ("SHU") and related procedural due process violations, and unsafe conditions in the SHU. (Am. Compl., Dkt. No. 3.)

For relief, Plaintiff seeks damages and injunctive relief including expunging his incident report, ordering defendants to respond to his administrative remedies or alternatively find that he exhausted his administrative remedies, correct his custody classification and transfer him to a camp, and provide dental surgery.

B.   Bivens Claims

A Bivens claim[1] provides an implied damages remedy as the federal analog to a constitutional tort claim brought against state actors under 42 U.S.C. § 1983. Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017). Implying a damages remedy is, however, "now a 'disfavored' judicial activity." Id. at 1857 (quoting Iqbal, 556 U.S. at 675)). "[A] Bivens remedy will not be available [in a new Bivens context] if there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id. (alterations added) (quoting Carlson v. Green, 446 U.S. 14, 18 (1980) (quoting Bivens, 403 U.S., at 396)). Claims for

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

constitutional violations by federal actors solely for injunctive relief under 28 U.S.C. § 1331 are not subject to the special factors analysis described in Abbasi. Id. at 1862-63 (discussing availability of injunctive relief for conditions of confinement as a factor counseling hesitation in extending a damages remedy.) For purposes of this screening, the Court will assume without deciding that an implied damages remedy exists for Plaintiff's constitutional tort claims.

     1.  *Failure to respond to administrative grievances*

Plaintiff alleges Warden David Ortiz, Assistant Warden Kroger, BOP Northeast Regional Director David Paul, the unnamed Administrative Remedy Coordinator of the BOP's Office of the General Counsel, and Lieutenant McCool failed to respond to his administrative grievances about prison conditions and/or failed to respond to his appeal of a disciplinary hearing report. "[O]bstruction of prison grievance procedures does not give rise to an independent claim[,]" under 42 U.S.C. § 1983. Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007). Therefore, Plaintiff's Bivens claims for failure to respond to his grievances are dismissed with prejudice. These issues may be raised, not for independent relief, but in opposition to any future motion by defendants to dismiss Plaintiff's claims for failure to exhaust administrative remedies. See Hardy v. Shaikh, 959 F.3d 578, 584 (3d Cir. 2020) (describing prisoner's burden of proof in opposing

dismissal of claims based on failure to exhaust administrative remedies).

    2.   *Claims regarding improper custody classification*

Mrs. Macavoy is Plaintiff's case manager. (A. Compl., Dkt. No. 3 at 6.) Plaintiff seeks to hold her liable for improperly scoring his custody classification on more than one occasion, which prevented his transfer to a minimum security camp and resulted in him not getting credit for programs he completed. (Id. at 12-13.) Plaintiff's case manager is Mr. Reiser, whom Plaintiff seeks to hold liable for allowing Plaintiff's unit team to improperly score his custody classification (Am. Compl., Dkt. No. 3 at 14.) Plaintiff further seeks to hold his unit manager, Mr. Robinson, and Warden Ortiz, Assistant Warden Kroger and Northeast Regional Director David Paul liable for permitting Mrs. Macavoy to improperly score Plaintiff's custody classification. (Id. at 6-8.)

For relief, Plaintiff seeks transfer to a prison camp upon correction of his custody classification. Inmates, however, do not have a protected liberty interest under the Due Process Clause to be assigned to a particular place of confinement, a prerequisite for a procedural due process challenge to the methods used to determine where a prisoner is housed based on his/her custody classification. Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005); Olim v. Wakinekona, 461 U.S. 238, 250 (1983) (in due process

6

challenge to prison regulations governing transfers, explaining that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.") Furthermore, "prisoners have no constitutional right to a particular classification[.]" Levi v. Ebbert, 353 F. App'x 681, 682 (3d Cir. 2009); see also Marti v. Nash, 227 F. App'x 148, 150 (3d Cir. 2007) (citing Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976)). Therefore, prisoners may not bring challenges to their custody classification under the Due Process Clause, and Plaintiff fails to state a Bivens claim against Mrs. Macavoy or any prison official or employee who failed to correct her alleged improper custody classification scoring. Amendment of these claims is futile because Plaintiff does not have a protected liberty interest in a particular custody classification, therefore, the claims will be dismissed with prejudice.

       3. *Eighth Amendment Conditions of Confinement Claims*

         *a.* Allegations

On August 21, 2020, Plaintiff sat at the metal desk in his cell in the SHU, and the desk broke off the wall and landed on top of Plaintiff on the floor. (Am. Compl., Dkt. No. 3 at 13.) Plaintiff was taken to a hospital for pain in his back and chest. (Id.) Plaintiff alleges Captain Baez "is responsible to enforce that prison officials working in S.H.U. provide safe living

conditions and protect inmates from unreasonably hazardous conditions." (Id. at 5.)

        b. *Standard of law*

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993)). "The Constitution 'does not mandate comfortable prisons…." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)), but it requires that prison officials provide "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526–527 (1984). To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must establish a defendant's deliberate indifference to inmate health or safety. Id. at 834 (citations omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. … [I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 837, 42.[2]

There is no vicarious liability under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

> "[T]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne* Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original).

Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

c.  *Analysis*

Plaintiff alleges that Captain Baez should have directed the employees under his supervision in the SHU to inspect the cell for safety. (Am. Compl., Dkt. No. 3 at 13.) Plaintiff, however, did not plead any facts to indicate Baez had any reason to believe the desk presented a danger of collapsing, nor did he plead Baez was aware of prior incidents of inmates being injured by collapsing desks. "The knowledge element of deliberate indifference is

---

[2] The Court reserves the issue of whether to imply a damages remedy under Bivens to an Eighth Amendment conditions of confinement claim. See Abbasi, 137 S. Ct. 1843.

subjective … meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (quoting Farmer, 811 U.S. at 837–38.) Therefore, the Court will dismiss this claim without prejudice. The Court also dismisses Plaintiff's claims against supervisory prison officials whom Plaintiff made aware of his complaint, because supervisory officials are not liable when there has been no underlying constitutional violation. Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) ("The first step in evaluating a section 1983 claim is to … determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all'") (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir.2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)).

4.   *Eighth Amendment inadequate medical care claims against Dentist Asao, Mr. Wilk, and Nurse Brian Taege*

a.   *Allegations*

Dr. Jeffrey Asao is a dentist at FCI Fort Dix. (Am. Compl., Dkt. No. 3 at 8.) Plaintiff seeks to hold him liable for failing to provide proper treatment for a serious dental need. (Id.) On June 2, 2020, Dr. Asao examined Plaintiff and determined that he had a tooth infection and prescribed antibiotics and pain medication. (Id. at 18.) Plaintiff's prescriptions were refilled

when he complained of severe tooth pain on June 16, 2020. (Id. at 19.) On June 29, 2020, Plaintiff was advised that he needed oral surgery. (Id.) On July 17, 2020, Dr. Asao x-rayed Plaintiff's tooth and told Plaintiff "you do need surgery but we don't have one yet and where [sic] waiting a response from regional dentist." (Id.) Plaintiff alleges he believes that Dr. Asao is capable of performing the surgery. (Id.)

Mr. Wilk is the medical administrator at FCI Fort Dix. (Id. at 7.) Plaintiff seeks to hold him liable for failing to respond to Plaintiff's administrative remedy requests concerning improper medical and dental care, and falsification of a medical record. (Id.) On October 23, 2019, Plaintiff requested dental care in a "cop out" directed to Mr. Wilk and received no response. (Id. at 18.) On February 2, 2020, Plaintiff mailed a letter to Mr. Wilk, stating that he needed dental care for a tooth infection, and that he had lost one tooth and another tooth was black. (Am. Compl., Dkt. No. 3 at 18.) Plaintiff did not see a dentist until June 2, 2020. (Id.) Plaintiff was informed by the medical department, on June 29, 2020, that he needed oral surgery. (Id. at 19.) When Plaintiff's infected tooth broke apart and he asked Mr. Wilk for help, Wilk told him it was "up to region." (Id.) Plaintiff also complained to Mr. Wilk about the delay in receiving his arthritis medication. (Id.)

Brian Taege is a nurse at FCI Fort Dix. (Am. Compl., Dkt. No. 3 at 7.) Plaintiff alleges Nurse Taege created a false medical record on August 22, 2020, indicating that a follow-up examination was performed after Plaintiff's emergency room visit on August 21, 2020, but Plaintiff states neither Nurse Taege nor anyone else provided him with a follow-up examination. (Id. at 12, 13, 19.)

b.   *Standard of law*

"[D]eliberate indifference to serious medical needs of prisoners" is "proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). Deliberate indifference can be shown when prison officials intentionally deny or delay access to medical care for nonmedical reasons or intentionally interfere with the treatment once prescribed. Id.; see also Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quotation omitted)). Negligence in diagnosis or treatment "does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment … requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

c. *Dental treatment claims*

Plaintiff has not stated an Eighth Amendment claim against Dr. Asao, who provided Plaintiff with evaluation and treatment for his tooth infection and referred Plaintiff for oral surgery. Plaintiff has not alleged any facts to indicate Dr. Asao knew of Plaintiff's need for dental evaluation sooner but delayed the evaluation for nonmedical reasons. Further, Dr. Asao is not liable for failing to perform oral surgery because Plaintiff has not alleged any basis for his belief that Dr. Asao is qualified to perform the surgery or responsible for scheduling the surgery with an oral surgeon. See Casilla v. New Jersey State Prison, 381 F. App'x 234, 236 (3d Cir. 2010) (dismissing 1983 claim for delay in scheduling surgery where the record contained nothing "concerning the process for scheduling surgeries, why the delay occurred, or how any of the appellees were responsible for the delay.")

Plaintiff's Eighth Amendment claims against Wilk may proceed based on his alleged knowledge of and acquiescence in the delay in providing Plaintiff with a dental evaluation and treatment between October 2019 and June 2020, when Dr. Asao diagnosed a tooth infection and prescribed antibiotics and pain medication.

Plaintiff has also alleged that on June 29, 2020, he submitted a remedy to Warden Ortiz concerning the delay in providing oral surgery after he lost a tooth due to infection, and the warden told him an appointment was not available, so proceed with your

administrative remedies. (Am. Compl., Dkt. No. 3 at 11.) Plaintiff also alleges that when he asked Wilk when he would be scheduled for surgery, Wilk said "it's up to region." (Am. Compl., Dkt. No. 3 at 19.) It is not clear from the amended complaint whether the oral surgery was approved as medically necessary, and the delay was in scheduling with a regional dentist, or alternatively whether the Fort Dix medical department had determined that surgery was appropriate but not medically necessary; therefore, regional administrative BOP approval was required. If it is the latter, Plaintiff's claim sounds in negligence rather than deliberate indifference to a serious medical need for surgery. The Court will dismiss these Eighth Amendment claims against Wilk and Warden Ortiz without prejudice.

d.   *Arthritis medication claims*

Plaintiff has not alleged sufficient facts concerning the delay in refilling his medications for arthritis to state a cognizable Eighth Amendment claim because he has not alleged there was a nonmedical reason for the delay, how long the delay lasted, or that he had a serious medical need for immediate refills or suffered any injury as a result of delay. Therefore, Plaintiff failed to state an Eighth Amendment claim against any defendant on this claim.

e.   *Falsification of medical record claim*

Plaintiff also seeks to hold Nurse Brian Taege liable for falsifying a medical record to show that Plaintiff received the follow-up examination prescribed by an emergency room doctor after treatment for injuries when a metal desk fell on him. The Court will dismiss this claim without prejudice against Taege and the prison officials, including Wilk, to whom Plaintiff reported the alleged false medical record because Plaintiff did not allege any injury caused by the lack of a follow-up examination.

5.   *Failure to reveal basis for SIS Investigation, failure to provide 30-day SHU assignment review, and excessive SHU assignment*

a.   *Allegations*

In February 2020, Plaintiff asked Mr. Akinson, an SIS lieutenant, the basis for the SIS investigation of Plaintiff. (Am. Compl., Dkt. No. 3 at 14.) Akinson said that he had nothing to do with the investigation, it was Plaintiff's unit team, but Akinson could get Plaintiff released from the SHU if Plaintiff agreed to act as a confidential informant. (Id.)  When Plaintiff refused, Akinson did not release Plaintiff. (Id.) Mr. Aldujar is also an SIS lieutenant. (Id. at 5.) Plaintiff seeks to hold Mr. Alduhar liable for not assessing Plaintiff for continued SHU placement every thirty days, as required during an SIS investigation. (Id.)

b.   *Standard of law*

"In *Sandin v. Conner*, 515 U.S. 472 … (1995), the United States Supreme Court acknowledged that state prison regulations may create liberty interests protected by the Due Process Clause." Wilson v. Hogsten, 269 F. App'x 193, 195 (3d Cir. 2008). The Third Circuit Court of Appeals held that "the federal government may conceivably also confer such liberty interests on prisoners." Id. (citing Crowder v. True, 74 F.3d 812, 815 (7th Cir. 1996)). Protected liberty interests are limited to impositions by prison officials of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." Allah v. Bartkowski, 574 F. App'x 135, 139 (3d Cir. 2014) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (citing Sandin, 515 U.S. at 486)).

c.   *Analysis*

In his amended complaint, Plaintiff alleges he was in the SHU for various reasons including an SIS investigation, as a sanction for a prison disciplinary infraction, and upon his request for protective custody. This Court cannot discern from the amended

complaint how long Plaintiff was in the SHU based on the SIS investigation or what conditions Plaintiff was subjected to in the SHU. Without this information, the Court cannot determine whether the conditions Plaintiff was subjected to as a result of the SIS investigation triggered a liberty interest protected by the Due Process Clause. Therefore the Court will dismiss these Due Process claims without prejudice.

6. *Due process violations in connection with disciplinary hearing*

a. *Allegations*

K. Hampton is a disciplinary hearing officer ("DHO") at FCI Fort Dix, who conducted Plaintiff's disciplinary hearing on October 24, 2020. (Am. Compl., Dkt. No. 3 at 8, 20.) Plaintiff alleges Hampton denied his request to see the evidence against him, lied in the report by stating that Plaintiff had pled guilty, and amended the report without a hearing, after correcting the discrepancies that Plaintiff complained of in his appeal to the regional director. (Id. at 20.) The only sanction Plaintiff alleges the DHO imposed was fifteen days in the SHU. (Id. at 15.) He seeks expungement of the incident report.

b. *Standard of law*

The Court construes the amended complaint as challenging only the conditions of confinement during Plaintiff's fifteen-day period in the SHU, because Plaintiff did not allege additional

sanctions or that he lost good conduct time credit and seeks to have it restored. See Arango v. Winstead, 352 F. App'x 664, 665-66 (3d Cir. 2009) (where prisoner did not allege that sanctions altered the length of incarceration, claim was cognizable under § 1983.) "Due process applies only where the conditions of confinement impose 'atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin, 515 U.S. at 484)). "Placement in administrative segregation for days or months at a time … do not implicate a protected liberty interest." Arango, 352 F. App'x at 665-66 (citing Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002); Fraise v. Terhune, 283 F.3d 506, 522-23 (3d Cir. 2002)).

      c.   *Analysis*

Fifteen days in disciplinary detention is not an atypical and significant hardship in relation to the ordinary incidents of prison life. See e.g. Jones v. Davidson, 666 F. App'x 143, 147 (3d Cir. 2016) (holding thirty days in restricted housing unit was not atypical and significant hardship that created protected liberty interest). The Court will dismiss this claim without prejudice because Plaintiff has not alleged a cognizable liberty interest that provides him protection under the Due Process Clause.

      7.   *First Amendment retaliation claims against Jones, Castellano, Macavoy and Robinson*

      a.   *Allegations*

Mr. Castellano and Mr. Jones are Plaintiff's unit counselors. (Id. at 7.) Plaintiff seeks to hold them liable for their alleged harassing and intimidating behavior. (Id.) More specifically, in September 2018, when Plaintiff arrived at FCI Fort Dix, he met with Mr. Castellano, who asked him if he was happy with his cell assignment. (Id. at 17.) Plaintiff asked for a lower bunk due to his medical conditions. (Id.) Castellano told Plaintiff he could arrange it, but he wanted Plaintiff to work as a confidential informant. (Am. Compl., Dkt. No. 3 at 17.) Plaintiff refused, and the next week he was transferred to a new cell by Jones and Castellano. (Id.) Plaintiff asked why he was transferred and Castellano told him they already had that conversation. (Id.) Plaintiff was moved to another cell later that month. (Id.) Around the end of October 2018, Castellano and Jones began shaking down Plaintiff's section of a twelve-man cell, at least twice a month. (Id.) In August 2019, they confiscated his commissary items and prayer rug. (Id.) After Plaintiff asked Castellano for a confiscation form, Castellano said "we're not done with Alberto Salome." (Id.) That night, Plaintiff was transferred to another cell. (Id.)

On October 10, 2019, Plaintiff was assaulted while sleeping and the assailant could not be identified. (Id. at 18.) Jones and Castellano stopped harassing Plaintiff after the assault, causing Plaintiff to believe they had arranged it. (Id.) Plaintiff talked

to a lieutenant from another complex about the harassment by Castellano and Jones, and she recommended that Plaintiff seek protective custody, which Plaintiff did. (Am. Compl., Dkt. No. 3 at 17.) Plaintiff submits that the harassment by Jones and Castellano occurred from September 2018 through October 2019. (Id.) On October 18, 2019, Castellano went to Plaintiff's cell for a UDC hearing and told him "yeah we got you where you belong, don't even think your [sic] placing another foot in my unit." (Id. at 18.)

Plaintiff alleges that his case manager, Mrs. Macavoy, teased him by telling him to pack his things for his release from the SHU, but then he was not released. (Id. at 11.) In March 2020, he alleges that she visited him in the SHU and asked "what is your problem, don't you want to go back?" (Id. at 15.) Plaintiff asked why he was still in the SHU. (Id.) She shouted, within the hearing range of other inmates, "stop crying, you are the one who asked for protective custody." (Id. at 11, 15-16.) Inmates then harassed and bullied Plaintiff. (Id.)

Mr. Robinson is Plaintiff's unit manager. (Id. at 6.) Plaintiff seeks to hold Robinson liable for teasing him by asking Plaintiff if he wanted to be released from the SHU and return to the compound, knowing he was not going to release him. (Id. at 14-15.)

b.   *Standard of law*

The Court construes Plaintiff's claims of harassment as retaliation in violation of the First Amendment.

> To state a prima facie case of First Amendment retaliation, a claimant must allege that (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (first quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000); and then quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Palmore v. Hornberger, 813 F. App'x 68, 70 (3d Cir. 2020).

c.   *Analysis*

Plaintiff does not allege that harassment by Macavoy or Robinson was in retaliation for his constitutionally protected conduct. Therefore, he fails to state a First Amendment retaliation claim against them. See e.g. Iwanicki v. Pennsylvania Dep't of Corr., 582 F. App'x 75, 79 (3d Cir. 2014) (noting it was questionable whether the correspondence at issue was constitutionally protected to support a First Amendment retaliation claim). Furthermore, teasing or verbal harassment[3] does

---

[3] The Court notes Plaintiff did not allege Macavoy accused him of being in a snitch in front of other inmates, but rather that he had asked for protective custody.

not constitute an adverse action sufficient to deter a person of ordinary firmness from exercising a constitutional right. See e.g. Marten v. Hunt, 479 F. App'x 436, 439 (3d Cir. 2012) (affirming dismissal of First Amendment retaliation claim because verbal threats are not sufficient to constitute an adverse action.) Amendment of the retaliation claims against Macavoy and Robinson is futile because the conduct alleged did not constitute an adverse action. Thus, the claims will be dismissed with prejudice.

The Court turns to the claims against Jones and Castellano, allegedly based on their conduct in retaliation for Plaintiff refusing to act as a confidential informant. Assuming without deciding that Petitioner has a First Amendment right not to speak,[4] which protects his conduct of refusing to act as a confidential informant, transferring Plaintiff to a different cell on two or three occasions, without more, is not sufficient to deter a person of ordinary circumstances from exercising his constitutional right.[5] Verbanik v. Harlow, 512 F. App'x 120, 122 (3d Cir. 2013)

---

[4] It does not appear that the Third Circuit has found a right not to act as a confidential informant in the prison setting that is protected by the First Amendment. See Nelson v. Stevens, No. 18-CV-238-WMC, 2020 WL 2112270, at *15-16 (W.D. Wis. May 4, 2020) (noting Second Circuit found a prisoner has a First Amendment right to refuse to act as a confidential informant, but Fifth and Ninth Circuits held there is no First Amendment right "not to snitch," and the Seventh Circuit has not decided the issue.)

[5] The Court also reserves the issue of whether to imply a Bivens remedy for First Amendment retaliation by prison employees when a prisoner refuses to serve as a confidential information.

(holding that housing transfer, without allegations concerning adverse living conditions, did not constitute adverse action to support First Amendment retaliation claim.) Arranging for an inmate on inmate assault is certainly sufficient to constitute an adverse action, but Plaintiff has not alleged any facts supporting his belief that Jones and Castellano had anything to do with the assault, apart from his allegation that they did not harass him after the assault. Additionally, the assault occurred nearly a year after Plaintiff refused to act as a confidential informant, precluding a reasonable inference that the assault was substantially motivated by Plaintiff's constitutionally protected conduct.

Plaintiff also alleges Jones and Castellano conducted cell searches[6] and confiscated his property in retaliation for his refusal to work as a confidential informant. Plaintiff alleges he refused Castellano's request in September 2018. The cell searches are alleged to have occurred bi-weekly beginning around the end of October 2018, with the confiscation of Plaintiff's property occurring in August 2019. Under the circumstances, it is implausible that the cell searches and confiscation of property

---

[6] The Court does not construe the allegations concerning the cell searches as a Fourth Amendment claim because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984).

were the result of Plaintiff's refusal to act as a confidential informant. <u>See</u> <u>e.g.</u> <u>Burton v. Giroux</u>, 794 F. App'x 196, 198 (3d Cir. 2019) (affirming dismissal of claim where prisoner failed to allege a "reason to believe that his threat to file a complaint played any role in [corrections officer's] decision to charge him with misconduct.")

8.   *RLUIPA and First Amendment free exercise of religion claims against Jones and Castellano*

Plaintiff alleged that his unit counselors, Jones and Castellano, confiscated his prayer rug during a cell search. (Am. Compl., Dkt. No. 3 at 17.) The Court construes this allegation as raising a claim under the Protection of Religious Exercise in Land Use and by Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. § 2000cc *et seq.*, and under the First Amendment Free Exercise Clause. The provision of RLUIPA relevant here "provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" <u>Holt v. Hobbs</u>, 574 U.S. 352, 357–58 (2015) (quoting 42 U.S.C. § 2000cc(a)(1)).

Plaintiff has not alleged how long he was deprived of his prayer rug or how the loss of his prayer rug placed a substantial burden on his exercise of religion. Thus, Plaintiff has failed to state a claim under RLUIPA, and he has also failed to allege a more demanding First Amendment free exercise of religion claim. See Robinson v. Superintendent Houtzdale SCI, 693 F. App'x 111, 117 (3d Cir. 2017) (quoting Cutter v. Wilkinson, 544 U.S. 709, 717 (2005)) ("RLUIPA is broader than the First Amendment and requires the 'compelling government interest' and 'least restrictive means' test of strict scrutiny[.])" These claims will be dismissed without prejudice.

9. *Fourteenth Amendment deprivation of property claims against Jones and Castellano*

Plaintiff alleges that Jones and Castellano confiscated his prayer rug and items he had purchased from the commissary when they searched his cell. (Am. Compl., Dkt. No. 11 at 6.) Although prisoners have a procedural due process interest in their property, the protection extends only so far that prisoners must be afforded a meaningful post-deprivation remedy. Cruz v. SCI-SMR Dietary Servs., 566 F. App'x 158, 160 (3d Cir. 2014) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A prison's internal grievance system and the New Jersey Tort Claims Act may provide adequate post-deprivation

remedies. <u>See</u> <u>e.g.,</u> <u>Ragland v. Comm'r New Jersey Dep't of Corr.</u>, 717 F. App'x 175, 178 (3d Cir. 2017). Plaintiff has not alleged that he was not provided an adequate post-deprivation remedy. Therefore, the Court will dismiss the Fourteenth Amendment due process claims without prejudice.

C.   Motion for Appointment of Pro Bono Counsel

Plaintiff filed a motion for appointment of pro bono counsel under 28 U.S.C. § 1915. (Mot. for Appointment of Counsel, Dkt. No. 5.) Plaintiff seeks appointment of counsel because is unable to afford counsel, the issues presented here are complex, he has a limited opportunity to use the law library because he is in the SHU, he lacks legal knowledge, and he has been unable to find counsel willing to take his case. (<u>Id.</u>)

28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Before appointing counsel, the Court must determine whether the plaintiff presents of claim of arguable merit. <u>Tabron v. Grace</u>, 6 F.3d 147, 155 (3d Cir. 1993). If there is a claim of arguable merit in fact and law, the Court should consider the following factors in its discretionary decision to appoint pro bono counsel: the plaintiff's ability to present the case, the difficulty of the legal issues, plaintiff's to pursue factual investigation, complexity of discovery, importance of credibility determinations, and need for expert witnesses. <u>Id.</u> at 155-57.

Plaintiff, in the amended complaint, states a cognizable §
1983 claim under the Eighth Amendment solely for delay in providing
dental treatment. The claim is not complex, and Plaintiff has
demonstrated sufficient legal knowledge to pursue the claim at
this early stage of the proceeding. See Tabron, 6 F.3d at 156
("[t]he plaintiff's ability to present his or her case is, of
course, a significant factor that must be considered in determining
whether to appoint counsel.") The Court will deny, without
prejudice, Plaintiff's motion for appointment of counsel.

    D.   First Motion for Injunction

Plaintiff filed a motion for an injunction on October 26,
2020, alleging that his unit team and SHU officials have denied
him access to a copier to make copies of legal documents. (Mot.
for Injunction, Dkt. No. 4.) Plaintiff has not alleged a claim of
denial of access to the courts in the amended complaint. He must
do so before he can seek injunctive relief, because to succeed on
a claim for preliminary injunctive relief, a plaintiff must "show
as a prerequisite[:] (1) a reasonable probability of eventual
success in the litigation, and (2) that it will be irreparably
injured ... if relief is not granted…." Reilly v. City of
Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26,
2017) (quoting Del. River Port Auth. v. Transamerican Trailer
Transport, Inc., 501 F.2d 917, 919–20 (3d Cir. 1974) (citations
omitted)). Plaintiff cannot establish a reasonable probability of

eventual success on a claim that he has not raised in the amended complaint. The Court also notes that amendment of the complaint to bring a First Amendment denial of access to the courts claim is futile unless Plaintiff can allege that the refusal to make copies of legal documents precluded him from bringing a nonfrivolous legal claim. See e.g. Prater v. Wetzel, No. 15-2433, 2015 WL 8020801 (3d Cir. Dec. 7, 2015) (citing Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008)). For example, if a court permits a plaintiff to proceed without submitting additional copies, he has not been denied access to the courts. The Court will deny Plaintiff's first motion for injunction.

E.    Second Motion for Injunction

In his second motion for injunction, filed on December 18, 2020, Plaintiff seeks an order directing the BOP Central Office to accept his administrative appeals; alternatively, he asks the Court find that he has exhausted the administrative remedies on the claims raised in his amended complaint. (Mot. for Injunction, Dkt. No. 9.) As discussed above, Plaintiff does not have a constitutional right to a prison administrative remedy program. Therefore, he cannot establish that he is likely to succeed on his claim that defendants violated the Constitution by failing to address his administrative remedy requests and appeals. If Defendants raise failure to exhaust administrative remedies as an affirmative defense, Plaintiff will then have the burden to

demonstrate he exhausted the remedies that were available to him. See <u>Hardy</u>, 959 F.3d 578, 584 (3d Cir. 2020) (describing prisoner's burden of proof in opposing dismissal of claims based on failure to exhaust administrative remedies). It is premature for the Court to determine whether Plaintiff has met that burden because defendants have not yet responded to the claims in the amended complaint. Therefore, the Court will deny Plaintiff's second motion for injunction.

III. CONCLUSION

For the reasons stated above, the Court dismisses all § 1983 claims, with the exception of the Eighth Amendment claims against Mr. Wilk and Warden Ortiz for delay in providing dental treatment. The Court denies without prejudice Plaintiff's motion for appointment of pro bono counsel, and denies Plaintiff's first and second motions for injunction. The Court will administratively terminate this matter, subject to reopening if Plaintiff timely pays the $400 filing fee or submits a properly completed application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a).

An appropriate Order follows.


DATE: **May 14, 2021**

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              **United States District Judge**